```
 1 | ROBERT S. BREWER, Jr.
   | United States Attorney
 2 | ALEXANDRA F. FOSTER
   | Assistant United States Attorney
 3 | Washington, D.C. Bar No. 470096
   | Federal Office Building
 4 | 880 Front Street, Room 6293
   | San Diego, California 92101-8893
 5 | Telephone: (619) 546-6735
   | Email: Alexandra.Foster@usdoj.gov
 6 |
   | Attorneys for United States of America
 7 |
```

**FILED** JAN 2 1 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20CR01182-BAS |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| KIRILL VICTOROVICH FIRSOV, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Robert S. Brewer, Jr., United States Attorney, and Alexandra F. Foster, Assistant United States Attorney, and defendant, Kirill Victorovich Firsov, with the advice and consent of Igor Litvak, counsel for defendant, as follows:

### I
### THE PLEA

Defendant agrees to plead guilty to the Information charging defendant with:

Beginning on a date unknown and continuing up to and including on or about March 4, 2020, in the Southern District of California, and elsewhere, defendant Kirill Victorovich FIRSOV, without the authorization of the issuer of access devices, to wit account names and passwords of Company A customers, knowingly and with intent to defraud, aided and abetted the solicitation of buyers through the DEER.IO platform with the purpose of offering and selling said access devices, said conduct affecting interstate and

Plea Agreement                                              Def. Initials KF
                                                            20CR01182-BAS

foreign commerce, in that the access devices were offered and sold via the internet, in violation of 18 U.S.C. §§ 2, 1029(a)(6)(A) and 1029(c)(1)(A)(i).

In exchange for Defendant's guilty plea, the government agrees not to prosecute defendant thereafter on activity related to this count, unless Defendant breaches the plea agreement, or the guilty plea entered pursuant to this plea agreement is set aside for any reason. Defendant expressly waives all constitutional and statutory defenses to the reinstatement of any charges dismissed pursuant to this agreement.

## II
## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED

Defendant understands that the offense to which he is pleading guilty has the following elements:

1. Defendant knowingly aided and abetted the solicitation of a person for the purpose of offering an access device;
2. The criminal, whom Defendant aided and abetted, solicited that person without authorization of the issuer of the access device;
3. Defendant acted with the intent to defraud; and
4. Defendant's conduct in some way affected commerce between one state and another state, or between a state of the United States and a foreign country.

An "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access, that can be used alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

//
//
//

### B. ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. Up through March 7, 2020, Kirill Firsov was the administrator of a cyber platform, DEER.IO, which catered to cyber criminals. Firsov was well paid for his work administering and maintaining DEER.IO.
2. DEER.IO is a Russian-based platform that allows criminals to purchase access to cyber storefronts and sell illegal products or services through the DEER.IO platform.
3. DEER.IO started operations as of at least October 2013, and, as of March 2020, had approximately 3,000 active shops with sales exceeding $17 million.
4. On March 1, 2019, when a person logged into DEER.IO, it looked like this:



5. The DEER.IO platform offered a turnkey online storefront design and hosting platform, from which cybercriminals could advertise and sell their products, such as

harvested credentials and hacked servers, and services, such as assistance performing a panoply of cyber hacking activities. As detailed above, a criminal could just "sign up," "configure wallets to receive funds," "upload products," and "get money."

6. Once shop access was purchased via the DEER.IO platform, the site then guided the newly-minted shop owner through an automated set-up to upload the products and services on offer through the shop and configure crypto-currency wallets to collect payments for the purchased products and/or services. A cybercriminal who wanted to sell contraband or offer criminal services through DEER.IO could purchase a storefront directly from the DEER.IO website for 800 Rubles (approximately $12.50) per month. The monthly fee was payable by Bitcoin or a variety of online Russian payment methods such as WebMoney, a Russian based money transfer system similar to PayPal.

7. The shop owner had the option to purchase a storefront name linked to DEER.IO or one its subdomains, like DEER.ST, DEER.IS or DEER.EE (e.g., https://[SHOP NAME].deer.io, such as ONLYFB.DEER.IO, SHIKISHOP.DEER.IO and SELLACCSS.DEER.IS), or a custom name (e.g., https://[SHOP NAME], such as SQLBAZAR.SHOP and ISIS.RENTS.HOUSE), which directed the prospective buyer to the storefront infrastructure hosted on DEER.IO.

8. Here was the storefront for SHIKISHOP.DEER.IO, one of the shops on DEER's platform:



9. A cybercriminal who wanted to purchase from storefronts on the DEER.IO website could use a web browser to navigate to the DEER.IO domain, which resolved to the DEER.IO storefronts. DEER.IO contained a search function, so individuals could search for specific items or the user could navigate through the website looking for items to purchase. Any purchases were conducted using cryptocurrency, such as Bitcoin, or through Russian-based money transfer systems.

10. For example, as reflected above, a cybercriminal could purchase stolen Uber accounts with that Uber user's credit card information or stolen Spotify premium accounts from SHIKISHOP.DEER.IO. To make these purchases, the prospective buyer just needed to click on the cart on the right hand side of the screen.

11. An initial scan through DEER.IO storefronts revealed thousands of compromised accounts posted for sale, including Personally Identifiable Information (PII) files containing full U.S. Social Security Numbers, dates of birth and victim addresses.

Many of these victims were located in Europe and the United States – including victims in the Southern District of California.

12. On or about March 4, 2020, the FBI purchased approximately 1,100 gamer accounts from the DEER.IO store ACCOUNT-MARKET.DEER.IS for under $20 in Bitcoin. Once payment was complete, the FBI obtained the gamer accounts, including the user name and password for each account. Out of the 1,100 gamer accounts, 249 accounts were hacked Company A accounts. Company A confirmed that if a hacker gained access to the user name and password of the user account, that hacker could use that account. A gamer account provides access to the user's media library. The accounts also often have linked payment methods, so the hacker could use the linked payment method to make additional purchases on the account. Some users also have subscription-based services attached to their gamer accounts.

13. Company A is located in San Diego, California. It operates interactive video gaming platforms, and sells related products and services. Like other video gaming platforms, Company A users have individual gamer accounts protected by user names and passwords. Company A confirmed that the 249 accounts were actual accounts, and at least seven of them had been flagged for potentially fraudulent activity on the account.

14. Firsov was arrested upon arrival at JFK Airport in New York on March 7, 2020. Firsov waived his *Miranda* rights and signed an advice of rights (in Russian) and agreed to speak with FBI agents. Firsov told the agents that he was the administrator of DEER.IO. FIRSOV confirmed that he posted advertisements on cybercriminal forums recruiting both sellers and buyers to the DEER.IO platform. Firsov also explained that the advertised numbers –over $17 million as of March 2020– was carefully calculated and updated to accurately reflect the amount of money that DEER.IO shopkeepers had been paid.

15. Firsov maintains that the bulk of the sales on DEER.IO were Russian accounts, but the parties agree that the government could show that shop owners on the DEER.IO

platform sold at least $1.2 million in U.S.-based stolen information, to include the gamer accounts identified above.[1]

## III
## PENALTIES

Defendant understands that the crime to which he is pleading guilty carries the following penalties:

A. a maximum 10 years in prison;

B. a maximum $250,000 fine;

C. a mandatory special assessment of $100;

D. a term of supervised release of no more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release;

E. restitution to the victim of the offense for the full amount of its losses pursuant to 18 U.S.C. § 3663A; and

F. Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, his conviction in this case will make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## IV
## DEFENDANT'S WAIVER OF TRIAL RIGHTS

Defendant understands that this guilty plea waives the right to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

---

[1] Firsov further concedes that his behavior meets the jurisdictional requirements of 18 USC Sec. 1029(h), since the offense involved access devices issued, owned, managed and controlled by Company A, and he transported his laptop into the United States, which was an article used to assist in the commission of the offense.

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages of trial;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

## V
## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

The Government represents that any information establishing the factual innocence of defendant known to the undersigned prosecutor in this case has been turned over to defendant. The Government will continue to provide such information establishing the factual innocence of defendant.

Defendant understands that if this case proceeded to trial, the Government would be required to provide impeachment information relating to any informants or other witnesses. In addition, if defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. Defendant acknowledges, however, that by pleading guilty defendant will not be provided this information, if any, and defendant also waives the right to this information. Finally, defendant agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI
## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. Defendant understands that, by pleading

guilty, defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences; revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which will serve as grounds to withdraw defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened defendant or defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because in truth and in fact defendant is guilty and for no other reason.

## VII
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities, although the Government will bring this plea agreement to the attention of other authorities if requested by the defendant.

## VIII
## APPLICABILITY OF SENTENCING GUIDELINES

Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory, and the Court may impose a sentence more severe or less severe than otherwise applicable under the

Guidelines, up to the maximum in the statute of conviction. Defendant understands further that the sentence cannot be determined until a presentence report has been prepared by the U.S. Probation Office and defense counsel and the Government have had an opportunity to review and challenge the presentence report. Nothing in this plea agreement shall be construed as limiting the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX
## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Defendant understands that the sentence is within the sole discretion of the sentencing judge. The Government has not made and will not make any representation as to what sentence defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court. Likewise, the recommendation made by the Government is not binding on the Court, and it is uncertain at this time what defendant's sentence will be. Defendant also has been advised and understands that if the sentencing judge does not follow any of the parties' sentencing recommendations, defendant nevertheless has no right to withdraw the plea.

## X
## PARTIES' SENTENCING RECOMMENDATIONS

### A. SENTENCING GUIDELINE CALCULATIONS

Although the parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the Government will recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures:

| | | |
|---|---|---|
| Base offense level | 6 | (2B1.1) |
| Loss ($550K-$1.5 million) | +14 | (2B1.1(b)(1)(H)) |
| 10 or more victims | +2 | (2B1.1(b)(2)(A)) |

Plea Agreement

10

Def. Initials KE
20CR01182-BAS

```
RSP                        +2      (2B1.1(b)(4))
Outside the US/soph. means +2      (2B1.1(b)(10)(B) or (C))
Acceptance of Responsibility -3    (3E1.1)
Adjusted Offense Level     23
```

B.  ACCEPTANCE OF RESPONSIBILITY

Notwithstanding the above paragraph, the Government will not be obligated to recommend any adjustment for Acceptance of Responsibility if defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or
4. Materially breaches this plea agreement in any way.

C.  FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under USSG § 4A1.3, or sentence reductions under 18 U.S.C. § 3553. The Government will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section X, paragraph A above.

D.  NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have no agreement as to defendant's Criminal History Category.

E.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The parties agree that the facts in the "factual basis" paragraph of this agreement are true, and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

//

Plea Agreement                    11                    Def. Initials KE
20CR01182-BAS

### F. PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The parties agree that the Government will recommend that defendant be sentenced at the low end of the advisory guideline range as calculated by the Government pursuant to this agreement.

### G. SPECIAL ASSESSMENT/FINE/RESTITUTION

#### 1. Special Assessment.

The parties will jointly recommend that defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. The special assessment shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

#### 2. Fine and Restitution.

The parties have reached no agreement on the issue of restitution and fines. Each party is free to argue for or against restitution and/or fines at the time of sentencing.

#### 3. Forfeiture.

Defendant consents and agrees to the forfeiture of all property seized in connection with this case, except that Defendant's cell phone and laptop will be wiped and provided to Defendant's counsel for return to Defendant upon completion of his prison term.

### H. SUPERVISED RELEASE

If the Court imposes a term of supervised release, defendant agrees that he will not later seek to reduce or terminate early the term of supervised release until he has served at least 2/3 of his term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment.

## XI
## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

In exchange for the Government's concessions in this plea agreement, Defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based

on a claim of ineffective assistance of counsel. Defendant also waives, to the full extent of the law, any right to appeal or to collaterally attack the sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, unless the Court imposes a custodial sentence above the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing, excluding any recommended variance. If the custodial sentence is greater than the high end of that range, Defendant may appeal, but the Government will be free to support on appeal the sentence actually imposed. If Defendant believes the Government's recommendation is not in accord with this plea agreement, Defendant will object at the time of sentencing; otherwise the objection will be deemed waived.

If at any time Defendant files a notice of appeal, appeals or collaterally attacks the conviction or sentence in violation of this plea agreement, said violation shall be a material breach of this agreement as further defined below.

## XII
## BREACH OF THE PLEA AGREEMENT

Defendant acknowledges, understands and agrees that if defendant violates or fails to perform any of defendant's obligations under this agreement, such violation or failure to perform may constitute a material breach of this agreement.

Defendant acknowledges, understands and agrees further that the following non-exhaustive list of conduct by defendant unquestionably constitutes a material breach of this plea agreement:
1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any lawful court order related to this case;
6. Appealing or collaterally attacking the sentence or conviction in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

In the event of Defendant's material breach of this plea agreement, defendant will not be able to enforce any of its provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (defendant agrees that any statute of limitations relating to such charges is tolled as of the date of this agreement; defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for defendant's breach.

Additionally, defendant agrees that in the event of his material breach of this plea agreement: (i) any statements made by defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any prosecution of, or any action against, defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a material breach by the defendant. Additionally, defendant knowingly, voluntarily, and intelligently waives any argument under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and/or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

## XIII
## ENTIRE AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

## XIV
## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XV
### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant has read it (or that it has been read to him in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XVI
### DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is defendant's independent opinion, and his counsel did not advise him about what to say in this regard.

ROBERT S. BREWER, JR.
United States Attorney

**12/11/20**
DATED

ALEXANDRA F. FOSTER
Assistant U.S. Attorney

12/10/2020
DATED

IGOR LITVAK
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

12/10/2020
DATED

KIRILL FIRSOV
Defendant